IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **PATRICK COMI, # B-69649,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 14-cv-01348-SMY |
| | ) |
| **SALVADOR GODINEZ,** | ) |
| **RICHARD HARRINGTON,** | ) |
| **TIMOTHY VEATH, C/O NEW,** | ) |
| **LANCE W. PHELPS, S. WOOLEY,** | ) |
| **BARBARA MUELLER, C/O SHORE,** | ) |
| **MONICA NIPPE,** | ) |
| **GRIEVANCE OFFICER OAKLEY,** | ) |
| **and UNKNOWN PARTY,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Patrick Comi, an inmate who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights at Menard (Doc. 1). Plaintiff claims that he was wrongfully disciplined for possession of a weapon that was allegedly planted in his work area at Menard. In connection with this claim, he now sues the Director of the Illinois Department of Corrections ("IDOC") and numerous Menard officials for violating his rights under the First, Eighth, and Fourteenth Amendments (Doc. 1, p. 2). Plaintiff seeks declaratory judgment and monetary damages, among other things (Doc. 1, pp. 25-26).

### Merits Review Under 28 U.S.C. § 1915A

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner

1

complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). When considering the allegations in light of this standard, the Court finds that one of Plaintiff's seven claims (Count 3) survives preliminary review.

**The Complaint**

According to the complaint, Plaintiff was issued a disciplinary ticket for possession of contraband on April 2, 2013. Plaintiff claims that the disciplinary charges against him were unwarranted. Menard's weapons task force, which was comprised of Defendants New and Wooley, discovered a homemade shank in the third floor breakroom of Menard's health care unit ("HCU") on March 5, 2013 (Doc. 1, pp. 9-10). At the time, Plaintiff was working at the HCU and had just returned from the prison's barber shop. A confidential source allegedly linked the weapon to Plaintiff and a fellow inmate (Doc. 1, p. 12).

Defendant Phelps issued Plaintiff and his co-worker a disciplinary ticket on April 2, 2013 (Doc. 1, p. 11). The ticket resulted from an allegedly unfair internal investigation into the matter. Plaintiff maintains that Menard officials fabricated the charges, in an effort to convince Illinois lawmakers and Governor Pat Quinn to reopen Tamms Correctional Center ("Tamms") (Doc. 1, pp. 11-12).

Defendant Veath allegedly conducted an unfair disciplinary hearing (Doc. 1, p. 14). Prior to the hearing, Plaintiff requested a polygraph test, but was administered a voice stress test instead on March 27, 2013. The results indicated that Plaintiff's responses were deceptive. Plaintiff claims that Menard officials doctored the test results. He asked Defendant Veath for a continuance of the disciplinary hearing until a polygraph examination was conducted. Defendant Veath denied the request and also refused to call Plaintiff's witnesses. Plaintiff was ultimately found guilty of the rule violation following a disciplinary hearing on April 4, 2013. He received one year of segregation, demotion to C-grade status, commissary restrictions, and no contact visits (Doc. 1, p. 14).

Plaintiff complains that he was subjected to unconstitutional conditions of confinement in segregation. First, his blood pressure spiked as a result of the events described herein, and his doctor had to increase his dosage of blood pressure medicine (Doc. 1, p. 26). Second, he was only allowed to shower once each week. Third, Plaintiff was only allowed out of his cell to exercise one day per week.

Plaintiff filed numerous grievances to challenge the disciplinary hearing committee's decision, beginning on April 4, 2013 (Doc. 1, p. 15). However, Defendant Oakley and several other unknown grievance officers systematically lost or destroyed the grievances, in order to prevent Plaintiff from exhausting his administrative remedies (Doc. 1, pp. 15-16). Defendants Mueller and Nippe prevented Plaintiff from speaking to his attorney before a court date, by routinely cutting off his phone calls after twenty seconds when no one answered (Doc. 1, p. 16). Finally, Defendant Shore tampered with Plaintiff's outgoing legal mail, by opening it or refusing to send it (Doc. 1, p. 17).

Plaintiff now sues the IDOC Director[1] and numerous known[2] and unknown Menard officials for violating his rights under the United States Constitution and Illinois administrative law. Each of Plaintiff's claims are summarized and discussed in detail below. Plaintiff seeks declaratory judgment and monetary damages, among other things.

## Discussion

After carefully reviewing the allegations, the Court finds it convenient to divide the complaint into seven counts that are consistent with Plaintiff's characterization of the same.

---

[1] This defendant is Salvador Godinez.
[2] The known Menard officials include Richard Harrington (warden), Timothy Veath (adjustment committee chair), Lance Phelps (internal affairs officer), C/O New (weapons task force officer), S. Wooley (weapons task force officer), Barbara Mueller (counselor), Monica Nippe (counselor), C/O Shore (correctional officer), and Officer Oakley (grievance officer).

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**Count 1:** Defendants New, Wooley, Phelps, and Unknown Defendants (weapons task force officers) violated the Illinois Administrative Code by knowingly providing false information in support of the disciplinary action taken against Plaintiff;

**Count 2:** Defendants Godinez, Harrington, New, Wooley, Phelps, and Unknown Defendants (weapons task force officers) violated Plaintiff's right to due process of law under the Fourteenth Amendment in connection with the issuance of a false disciplinary ticket, which resulted in his placement in segregation, demotion to C-grade, commissary restriction, and no contact visits for a year;

**Count 3:** Defendant Veath violated Plaintiff's Fourteenth Amendment due process rights at the disciplinary hearing when he failed to call Plaintiff's witnesses to contradict testimony offered by a confidential source, which resulted in his placement in segregation, demotion to C-grade, commissary restriction, and no contact visits for a year;

**Count 4:** Defendants Oakley and Unknown Defendants (grievance officers) interfered with Plaintiff's right to access the courts under the Illinois Administrative Code and the First Amendment by routinely losing or destroying grievances challenging the April 4, 2013, decision of the adjustment committee;

**Count 5:** Defendant Shore and other Unknown Defendants (officers) interfered with Plaintiff's legal mail in violation of the First Amendment;

**Count 6:** Defendants Mueller and Nippe interfered with Plaintiff's telephone communications with counsel, in violation of Plaintiff's First, Sixth, and Fourteenth Amendment rights; and

**Count 7:** Defendants fabricated the disciplinary charges against Plaintiff in an act of retaliation against Illinois lawmakers and Governor Pat Quinn for closing Tamms Correctional Center.

As discussed in more detail below, only Count 3 survives preliminary review under Section 1915A.

**<u>Counts 1 & 4</u>**

The complaint fails to articulate a viable claim under the Illinois Administrative Code against Defendants New, Wooley, Phelps, and Unknown Defendants (weapons task force officers) for knowingly providing false information in support of disciplinary charges against Plaintiff (**Count 1**). For the same reasons, the complaint also fails to articulate any claim under the Illinois Administrative Code against Defendants Oakley and Unknown Defendants (grievance officers) for mishandling Plaintiff's grievances (**Count 4**).

Plaintiff filed this action pursuant to 42 U.S.C. § 1983. Section 1983 provides remedies for constitutional violations, not violations of state statutes and regulations. *See Whitman v. Nesic*, 368 F.3d 931, 935 n. 1 (7th Cir. 2004); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). The alleged violation of the Illinois Administrative Code does not give rise to an independent claim against Defendants. Therefore, both administrative code claims fail.

In addition, Plaintiff claims that the mishandling of his grievances by Defendants Oakley and Unknown Defendants (grievance officers) prevented him from accessing the courts, in violation of his rights under the First Amendment (**Count 4**). However, "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause" of the Fourteenth Amendment. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (citations omitted). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Put differently, the alleged mishandling of

Plaintiff's grievances by Defendant Oakley and other grievance officers, absent any personal involvement in the underlying deprivation of Plaintiff's constitutional rights, states no claim for relief.

Plaintiff's argument that the mishandling of his grievances prevented him from exhausting his administrative remedies and accessing the courts is equally unavailing. The Seventh Circuit has made it clear that "[w]hen a prisoner follows proper procedures and prison officials are responsible for mishandling his grievance, . . . [it cannot be said] that the prisoner has failed to exhaust his administrative remedies." *Smith v. Buss*, 364 Fed. Appx. 253 (7th Cir. 2010) (citing *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006)). No claim has been stated against Defendant Oakley or Unknown Defendants (grievance officers).

Accordingly, **Count 1** against Defendants New, Wooley, Phelps, and Unknown Defendants (weapons task force officers) shall be dismissed with prejudice for failure to state a claim upon which relief may be granted. Likewise, **Count 4** against Defendants Oakley and Unknown Defendants (grievance officers) under the Illinois Administrative Code shall be dismissed with prejudice for the same reason, and so shall the First Amendment access to courts claim arising from the mishandling of Plaintiff's grievances.

**Counts 2 & 3**

The complaint also fails to articulate a viable Fourteenth Amendment due process claim against Defendants Godinez, Harrington, New, Wooley, Phelps, and Unknown Defendants (weapons task force officers) (**Count 2**), in connection with the issuance of a false disciplinary ticket. However, Plaintiff will be allowed to proceed with his Fourteenth Amendment due process claim against Defendant Veath (**Count 3**) for conducting an allegedly unfair disciplinary hearing.

Both claims relate to conduct that resulted in Plaintiff's punishment with one year of segregation, demotion to C-grade status, commissary restrictions, and no contact visits.[3] An "inmate's liberty interest in avoiding segregation is limited." *Hardaway v. Meyerhoff, et al.*, 734 F.3d 740 (7th Cir. 2013) (quoting *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). Under certain circumstances, however, an inmate punished with segregation can pursue a claim for deprivation of a liberty interest without due process of law. *See Marion*, 559 F.3d at 697-98. Based on the allegations in the complaint, those circumstances are arguably present, at least with regard to Count 3.

The complaint alleges that Plaintiff was denied due process when he was issued a disciplinary ticket based on false evidence and later found guilty following an unfair disciplinary hearing. He was punished with a year in segregation, where his blood pressure spiked, his showers were limited to one each week, and he was only allowed to exercise outside of his cell once a week.

The fact that Defendants New, Wooley, Phelps, and Unknown Defendants (weapons task force officers) allegedly issued Plaintiff a disciplinary ticket based on fabricated charges does not create a liberty interest (Count 2). This is because "due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses[, and a] hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report." *Hadley v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994), aff'd, 70 F.3d 117 (7th Cir. 1995) (citations omitted). Accordingly, **Count 2** against Defendants Godinez, Harrington, New, Wooley, Phelps, and Unknown Defendants

---

[3] With the exception of his placement in segregation, Plaintiff's allegations do not present a viable constitutional claim that warrants a detailed discussion. *See, e.g.*, *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges).

(weapons task force officers), in connection with the issuance of a false disciplinary ticket, shall be dismissed.

Turning to Count 3 against Defendant Veath, to satisfy due process, an inmate facing disciplinary charges must be given: (1) advance written notice of the charges against him; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence in his defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). In addition, the decision of the adjustment committee must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395 (7th Cir. 1994). In other words, courts must determine whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000). Even a meager amount of supporting evidence is sufficient. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007).

Plaintiff primarily complains of a single violation of these procedural safeguards at his disciplinary hearing before Defendant Veath, i.e., his right to call witnesses in order to refute the testimony of a confidential source. Plaintiff does not challenge the use of a confidential informant in general, and he would not find success in this argument. The Seventh Circuit has long held that "inmates do not have a constitutional right to confront or cross-examine witnesses against them at disciplinary hearings." *Hadley*, 841 F. Supp. at 856 (citing *Mendoza v. Miller*, 779 F.2d 1287, 1292 (7th Cir. 1985); *cert. denied*, 476 U.S. 1142 (1986). Similarly, his due process claim does not hinge on the denial of his request for a polygraph test, and this argument would also be meritless. *See, e.g., Jemison v. Knight*, 244 Fed. Appx. 39, 42 (7th Cir. 2007) (citing *Freitas v. Auger*, 837 F.2d 806, 812 n. 13 (8th Cir. 1988) (holding that prisoners are not

entitled to polygraph tests in disciplinary hearings)). Plaintiff instead takes opposition with the fact that his request to call witnesses was denied. This allegation at least suggests that Plaintiff's disciplinary hearing may have violated the procedural safeguards described in *Wolff*.

However, the Court's analysis of Plaintiff's due process claim does not end there. Whether a protected liberty interest is implicated by Plaintiff's confinement in segregation depends on whether that confinement "imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hardaway*, 734 F.3d at 743 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Courts must consider two factors in determining whether disciplinary segregation imposes atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured." *Id.* at 743 (citing *Marion*, 559 F.3d at 697-98) (emphasis in original)).

A liberty interest may arise from longer terms of confinement, triggering the need for further factual inquiry into the conditions of a prisoner's confinement. *See Marion*, 559 F.3d at 698 (holding that the issue of whether 240 days in disciplinary segregation would implicate a protected liberty interest could not be decided at the pleading stage). Plaintiff was punished with a year in segregation. At first glance, this one-year term of punishment seems sufficiently long to create a liberty interest. However, the Court cannot ignore the fact that the duration of Plaintiff's punishment is just a small fraction of the total duration of his confinement in prison. Plaintiff is serving concurrent terms of sixty years for two counts of attempted murder and thirty years for one count of armed robbery. It is therefore questionable whether this one-year term of segregation gives rise to a protected liberty interest or triggers the need for further analysis of the conditions of Plaintiff's confinement. The Court will give Plaintiff the benefit of the doubt at this early stage and allow this claim to proceed.

The Court notes, however, that further factual development of this claim is required, particularly as it relates to the conditions of Plaintiff's confinement in segregation. *See Marion v. Columbia Correctional Inst.*, 559 F.3d 693, 699 (7th Cir. 2009). The conditions highlighted in the complaint do not raise constitutional concerns, in isolation or in combination. Plaintiff points to three conditions: (1) a spike in his blood pressure; (2) his lack of access to showers; and (3) his lack of access to exercise outside of his cell. Whether considered alone or in combination, none of these conditions amount to cruel and unusual punishment.

Plaintiff's claim that his blood pressure spiked is, of course, concerning to the Court. However, there is no indication that the spike in Plaintiff's blood pressure is related directly, or indirectly, to Plaintiff's placement in segregation. Plaintiff also alleges that his medical provider responded by increasing his dosage of blood pressure medication, in order to bring his blood pressure under control. Significantly, Plaintiff does not name his medical provider as a defendant in this action or claim that he received inadequate medical care. He does not allege that there were any delays in the adjustment of his medication or that the wrong dose was prescribed. He complains of no other side effects. Without more, Plaintiff's claim of a spike in his blood pressure does not amount to a constitutional violation, let alone support his argument that he suffered from unconstitutional conditions of confinement in segregation.

Plaintiff also complains of a lack of access to showers in segregation. According to the complaint, he received only one shower each week. The Seventh Circuit has specifically held that "limiting inmates to weekly showers does not violate the Eighth Amendment." *See Myrick v. Anglin*, 496 Fed. Appx. 670, 675 (7th Cir. 2012) (citing *Henderson v. Lane*, 979 F.2d 466, 468-69 (7th Cir. 1992); *Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988)). Moreover, Plaintiff does not allege that he was prevented from cleaning himself in other ways,

such as using water from the sink to do so. *Id*. The complaint does not suggest that Plaintiff's denial of access to showers offended constitutional norms or exposed him to unconstitutional conditions of confinement in segregation.

Finally, Plaintiff alleges that he was denied the opportunity to exercise outside of his cell more than once each week. This claim also falls short of suggesting that Plaintiff was exposed to unconstitutional conditions of confinement in segregation. The Seventh Circuit has observed that "an unjustified, lengthy deprivation of opportunity for out-of-cell exercise 'could reasonably be described as cruel and, by reference to the current norms of American prisons, unusual.'" *Winger v. Pierce*, 325 Fed. Appx. 435, 1 (7th Cir. 2009) (quoting *Pearson v. Ramos*, 237 F.3d 881, 884 (7th Cir. 2001)). *See also Turley v. Rednour*, 729 F.3d 645, 652 (7th Cir. 2013). However, the Seventh Circuit has made it clear that "short-term denials of exercise may be inevitable in the prison context and are not so detrimental as to constitute a constitutional deprivation." *Delaney v. DeTella*, 256 F.3d 679, 683-84 (7th Cir. 2001) (citing *Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir. 1997) (70-day denial permissible); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (28-day denial not deprivation); *Caldwell v. Miller*, 790 F.2d 589 (7th Cir. 1986) (no deprivation where exercise was denied for 30 days, but then allowed one hour of indoor exercise for next 6 months)). Plaintiff's alleged deprivation of exercise does not raise constitutional concerns, as pleaded. After all, Plaintiff has not alleged that he was deprived of an opportunity to exercise *in* his cell or that his cell was too small for exercise.

Given the deficiencies in Plaintiff's Fourteenth Amendment due process claims, the Court now finds that **Count 2** against Defendants Godinez, Harrington, New, Wooley, Phelps, and Unknown Defendants (weapons task force officers) shall be dismissed without prejudice.

Given the length of his confinement in segregation and the unconstitutional conditions of confinement he allegedly faced there, the Court will allow Plaintiff to proceed with **Count 3** against Defendant Veath at this time.

**Count 5**

No claim has been stated against Defendant Shore or the Unknown Defendants (officers) for interfering with Plaintiff's legal mail (**Count 5**). The Seventh Circuit has held that "[i]nmates have a First Amendment right both to send and receive mail, but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband." *Kaufman v. McCaughtry*, 419 F.3d 678, 685 (7th Cir. 2005) (citations omitted). A sporadic disruption of mail service will not violate the constitution. Although the First Amendment "applies to communications between an inmate and an outsider," a valid claim requires an allegation that there has been "a continuing pattern or repeated occurrences" of denial or delay of mail delivery. *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) ("Allegations of sporadic and short-term delays in receiving mail are insufficient to state a cause of action grounded upon the First Amendment." *Id.* (citing *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999); *Sizemore v. Wiliford*, 829 F.2d 608, 610 (7th Cir. 1987)). Beyond this, Plaintiff does not allege, and the complaint does not suggest, that Plaintiff was harmed as a result of this alleged interference with his mail. Accordingly, **Count 5** shall be dismissed without prejudice against Defendant Shore and Unknown Defendants (officers).

**Count 6**

Likewise, the complaint also fails to state a First Amendment claim against Defendant Mueller and Nippe for interfering with Plaintiff's phone calls (**Count 6**). The complaint alleges that Plaintiff's outgoing phone calls to his attorney were cut off when no

one answered within twenty seconds, and this prevented him from meeting with his attorney prior to a court hearing. The Seventh Circuit uses a two-part test to decide if prison administrators violate the right of access to the courts. *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). First, the prisoner must show that prison officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Jenkins v. Lane,* 977 F.2d 266, 268 (7th Cir. 1992) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). Second, he must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *see also Lehn*, 364 F. 3d at 868. That means that a detriment must exist, a detriment resulting from illegal conduct that affects litigation. It does not mean that any delay is a detriment. *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 506 U.S. 1062 (1993). Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation. *Kincaid*, 969 F.2d at 603.

To state a claim, a plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010). This requires Plaintiff to identify the underlying claim that was lost. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007).

Here, Plaintiff alleges that he was denied access to his legal counsel, when Defendants prematurely ended his phone calls to the attorney. However, Plaintiff clearly pleads himself out

of this claim. First, he admits that Defendants waited nearly twenty seconds before ending the calls, and they did not end the calls if the attorney actually answered. Plaintiff's complaint that Defendants Mueller and Nippe failed to wait long enough for his attorney to pick up the phone is meritless. But beyond this, Plaintiff fails to allege that he was actually harmed as a result of this conduct. His claim that he could not meet with his attorney prior to a court hearing, without more, does not hold water. For these reasons, **Count 6** against Defendants Mueller and Nippe shall also be dismissed, and the dismissal of this claim against them is with prejudice.

**Count 7**

Finally, the Court finds no merit in Plaintiff's claim against Defendants for fabricating the disciplinary charges against him, in an act of retaliation against Illinois lawmakers and Governor Pat Quinn for closing Tamms (**Count 7**). The claim is fantastical. In order to state a claim for retaliation against prison officials, a "prisoner must allege a chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988) (citing *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987)). However, Plaintiff cannot proceed on a claim of retaliation by "alleging merely the ultimate fact of retaliation." *Id* (quoting *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985)). Retaliation against a non-party cannot be inferred from the issuance a disciplinary ticket against Plaintiff. Conversely, retaliation against Plaintiff cannot be inferred from allegations of animus toward Illinois lawmakers, particularly without some conduct suggesting any connection. **Count 7** shall be dismissed with prejudice.

**Defendants Godinez & Harrington**

The Court finds that no individual capacity claims have been stated against Defendants Godinez or Harrington. Both of these defendants are named in the case caption, but

the statement of claim does not include any substantive allegations against either one. Only passing reference is made to both. Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). Further, the complaint does not explicitly request injunctive relief, so it is unnecessary to allow Plaintiff to proceed against either of these defendants in their official capacities, based on this request for relief. Accordingly, Defendants Godinez and Harrington shall be dismissed without prejudice from this action.

## Pending Motion

Plaintiff has filed a motion for recruitment of counsel (Doc. 3), which shall be **REFERRED** to **United States Magistrate Judge Philip M. Frazier** for a decision.

## Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1, 4, 6,** and **7** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. **COUNTS 2** and **5** are **DISMISSED** without prejudice for the same reason.

**IT IS ALSO ORDERED** that Defendants **MUELLER, NIPPE,** and **OAKLEY** are **DISMISSED** with prejudice. Defendants **GODINEZ, HARRINGTON, NEW, PHELPS, SHORE,** and **WOOLEY** are **DISMISSED** without prejudice.

The Clerk of Court shall prepare for Defendant **VEATH**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk

within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Philip M. Frazier** for further pre-trial proceedings, including a decision on Plaintiff's motion for recruitment of counsel (Doc. 3).

Further, this entire matter is hereby **REFERRED** to **United States Magistrate Judge Frazier** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs

under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED: January 13, 2015

s/ **STACI M. YANDLE**
**U.S. District Judge**